STATEMENT BY THE COURT.
Appellant, cotton factor in Memphis, sued the appellees in the Crittenden Circuit Court for $955.80, alleged to be due it as a balance of $2,100 advanced on 23 bales of cotton, after deducting the amount for which the cotton was sold.
The appellees filed an answer and cross-complaint, denying the debt, and alleging that, when they delivered the cotton to appellant, they directed appellant to sell the cotton before the time when the price declined to a point where it would not bring the money advanced, to-wit, $2,100; and alleged further that, if the cotton had been sold for the market value at the time it was consigned to appellant, it would have brought $243.14 more than the amount advanced, and prayed judgment for that amount.
The allegations of the cross-complaint were denied by the appellant.
It appears from the record that appellees on October 24, 1929, drew a draft on appellant for $2,100, and attached warehouse receipts for 23 bales of cotton thereto.
Mr. Chapman, one of appellees, testified that he called Mr. Jeter, who was appellant's agent, on the 'phone, told him what he had and that he needed $2,100. He thought it was worth twenty cents, but Jeter said nineteen. The difference between the price at Earle and *Page 473 
Memphis was about one cent. Witness said to Jeter, "I want to pay that $2,100, but you have got $10 a bale margin in it now; when cotton goes down — gets to where your money is not safe, sell the cotton." He said he thought cotton was going up, and witness knew the market was strong. "I never told him to hold it. I told them when cotton was going up to hold it, but I told them when cotton gets to where it is not safe, to sell it. I meant for them to sell when the cotton would bring the money."
Appellant's statement of the account was admitted as correct: and the attorney for appellee asked Chapman the following question: "Mr. Chapman, so that the jury may understand your contention in this matter, did I understand you to say you advised Mr. Jeter that as long as cotton was going up he might hold the cotton, but if it started to go down to sell it? A. Yes, sir; I instructed him that way. He said, `On your instructions, we don't need a note or anything because our money is in it.' The court: `You said he must not hold it until it went to below what you owed him? A. Yes, sir'."
Chapman also stated that, when Archer and Jeter came to see him about the matter in 1931, he told them that if they had sold the cotton as instructed they would owe him money.
B. G. Dickey testified that he was Chapman's partner, and heard the Chapman end of the telephone conversation with Jeter. He said: "Mr. Chapman instructed him to sell the cotton when it arrived — when they saw fit. I mean sell it before it went below the $2,100 in value, but, when the market went down to where the 23 bales would not net them $2,100, to sell." Witness did not know about price being discussed.
Appellant's witness, Jeter, testified, denying that Chapman directed the cotton to be sold. Said to hold it until he gave further instructions.
E. W. Archer, secretary and treasurer of the appellant, testified that the draft of $100 on October 24, 1929, was made by Chapman; that he had an individual account with appellant, and this cotton was credited to this account, and that afterwards Chapman came in and directed that the cotton be credited to Chapman Dickey. At that *Page 474 
time Chapman directed that the cotton be held until he gave further instructions. The cotton was sold March 6, 1931, and brought 12 1/2 cents per pound. The balance due is the amount sued for, $955.80.
The court instructed the jury, refusing to direct a verdict for appellant, and also to give plaintiff's requested instruction No. 1, as follows: "You are instructed that, as a matter of law, the agent of the plaintiff, J. S. Jeter, could not bind the plaintiff by any statement or guarantee that the defendants should receive any specific amount for the cotton shipped to plaintiff."
The jury returned a verdict in appellees' favor, and, from the judgment thereon, this appeal is prosecuted.
(after stating the facts). There was no error committed in refusing to give the requested instruction No. 1 for appellant, as there was no testimony warranting the submission of the question of a guarantee to the jury, and the court properly stated in instruction No. 4, given on its own motion, "There is no question of guarantee in this lawsuit."
The whole question is one of fact as to the contract or agreement about the sale of the cotton when it was delivered by the appellees to the appellant; and the jury was warranted in finding that appellant was instructed that it might hold the cotton for a rise, but, if the price should go down, they must sell it while the price was still high enough to realize the amount of money which had been advanced thereon by the cotton factors: and, also, that they violated their instructions, and did not make the disposition of the cotton as directed, and were not entitled to recover any further sum for loss in the sale of the cotton than the sum already advanced, and for which they were instructed to sell.
The jury was properly instructed, and the verdict is amply supported by the evidence.
The judgment is affirmed.
SMITH and BUTLER, JJ., dissent. *Page 475